POIALI'I PUSA PUNI and SEEPA POIALI'I, on Behalf of
Themselves and the POIALI'I FAMILY, Plaintiffs,

v.

MANUMA TUI and AGNES TUI, Defendants.

High Court of American Samoa
Land and Titles Division

LT No. 18-04

December 6, 2005

Before RICHMOND, Associate Justice; and MAMEA, Associate Judge.

Counsel: For Plaintiffs, Marie A. Ala`ilima
For Defendants, Arthur Ripley, Jr.

## OPINION AND ORDER

### Introduction

On June 18, 2004, Plaintiffs Poiali`i Pusa Puni ("Poiali`i) and Seepa Poiali`i ("Seepa") (collectively "Plaintiffs") brought this action to remedy an alleged breach of an earlier agreement by Defendants Manuma Tui ("Manuma") and Agnes Tui ("Agnes") (together "the Tuis"). That agreement, signed on January 21, 2003 ("the agreement"), effectively settled LT No. 1-02 and led to a dismissal of that action with prejudice.

LT No. 1-02 arose over conflicts emanating from the Tuis' desire to obtain a separation agreement from Poiali`i under A.S.C.A. §§ 37.1501-.1506. The separation agreement was a necessary step in the financial plan for construction of their new replacement house on the Poiali`i family's communal land named "Lealatele" in Pago Pago ("the land"). In the resulting agreement, the parties concluded that the Tuis could build a new house upon the land, but that it must be built within the "footprint" of the old house.

In the instant action, Plaintiffs seek to permanently enjoin the Tuis from completing construction of their new house, arguing that the dimensions of the new house exceed those authorized by the agreement. Essentially, Plaintiffs want the Tuis to tear down the new house—almost 80% completed when the action was filed—and replace it with a smaller one. In response, the Tuis argued that the new house complied with the specifications outlined in the agreement, and therefore, they had done nothing wrong. In answering the complaint, the Tuis also counterclaimed, arguing that Poiali`i, as the family sa`o, arbitrarily, and in violation of Samoan custom, refused to sign a lease for the land upon which the new house sits.[1]

On July 1, 2004, at the conclusion of the preliminary injunction application hearing, the Court, by interim bench order authorized under A.S.C.A. § 43.0304, granted the motion. The order enjoined the Tuis from further construction of their new house and from interfering while Poiali`i and Seepa completed their investigation of the alleged violation of the January 21 agreement. A further hearing on the preliminary injunction application, however, resulted in our November 5, 2004 order dissolving the preliminary injunction, thus allowing the Tuis to continue

---

[1] The Tuis also claim that Poaili`i, in withholding the lease as well as other alleged transgressions, acted maliciously and in bad faith towards the Tuis. On these grounds the Tuis counterclaimed for punitive damages in the amount of $10,000.

construction, but continuing the other interim orders of July 1, 2004.[2]
A week long trial on the merits began on April 14, 2005. Having heard testimony and considered the evidence,[3] we hold that the dimensions of the Tuis' new house comply substantially with the January 21, 2003 agreement. Accordingly, Plaintiffs' application for permanent injunction seeking removal of the new home is denied. We further find that since the Tuis did not violate the agreement, continuing to withhold the long-term lease would be arbitrary, capricious and contravene Samoan custom. Accordingly, we call on Poaili`i to issue the lease in a timely manner and in compliance with this Court's findings.

## Discussion

### I. Compliance with the January 21, 2003 Agreement

The January 21 agreement provides that the front and two sides of the foundation of the Tuis' new house must not extend beyond the "foundation" or "footprint" of the house replaced. In pertinent part, the agreement reads:

_____

[2] The other interim orders included the suspension of the proceedings until the filing of the jurisdictional certificate of irreconcilable dispute issued by the Secretary of Samoan Affairs (a filed certificate is jurisdictionally required under A.S.C.A. § 43.0302 as a prerequisite to the initiation of formal legal proceedings in the High Court). However, although a certificate specifically related to this action had not been filed, trial went forward on April 14 and concluded on April 21, 2005. This action is a sequel and immediately related to the intra-family controversy involving essentially the same parties litigated in LT No. 1-02, for which a certificate is on file. Being intimately familiar with the parties and their positions, the Court realizes that further mediation of this ongoing family dispute by the Secretary of Samoan Affairs would be useless. We therefore hold that for jurisdictional purposes, the certificate on file in LT No. 1-02 equally applies to this case.

[3] We also remind the parties, and their counsel, that under T.C.R.C.P. 65, "any evidence received upon an application for a preliminary injunction which would be admissible upon the trial [on the] merits becomes part of the record in the trial and need not be repeated upon the trial." Our findings of fact resulting from the evidence produced at two hearings on the preliminary injunction application are therefore also our trial findings, unless the additional evidence received at the trial modifies previous findings. The earlier findings, with one significant exception, remain entirely intact for purposes of our trial decision. The single difference: the construction of the Tuis' new house began in April or May 2004, not 2003. This correction effectively negates our earlier holding of laches on the part of Poaili`i and Seepa in bringing this action.

> The foundation of the new structure shall be limited to and remain the same as the existing house; it shall not be extended beyond the current foot-print of the existing house, except that the new structure's foundation can be extended toward the back of the lot, to the rock-wall and not beyond the rock-wall. The new house can be a two-story or multi-level structure.

Clearly, whether the front and sides of the new house exceed the "footprint" of the old house, and whether the back of the house exceeds that brick wall, is the crux of this dispute. Therefore, each side of the house will be analyzed separately.

## A. Back of the house

Uncontroverted evidence and testimony at trial and the preliminary injunction hearings established that the back of the new house is directly on the location of the removed old rock wall. Thus, the new house's rear foundation clearly complies with the wording of the January 21 agreement.

## B. Sides of the house

Except at the southeast corner of the old house where a concrete parking pad was added (discussed below), the two sides of the new house encompass the concrete areas that existed outside the original exterior walls of the old house. Poiali`i and Seepa characterize these concrete areas as walkways, and indeed, they served as such prior to the new house's construction. Plaintiffs argue that these concrete areas cannot be considered part of the "foundation" of the old house, since these areas were outside the old house's walls.

At first blush, Plaintiffs' contentions have merit. However, evidence presented at the preliminary injunction application hearings indicated that these concrete areas were in fact part of the old home's foundation.[4] Moreover, the evidence presented at trial—evidence that was uncontroverted by Plaintiffs—actually enhanced the Court's initial

---

[4] At the preliminary injunction hearing, Tufono Ionatana, a lesser Poiali`i family *matai*, and himself a licensed building tradesman who generally oversaw the construction of the new house, testified that he believed the old side concrete areas provided lateral support for the old house's exterior walls. He therefore considered these concrete areas to be part of the old house's foundation. In his view, the new house's walls, though atop the old outside concrete areas, were nonetheless inside the old house's "footprint."

finding. Trial evidence established that rebar (iron rods used to strengthen and support concrete foundations) connected these external concrete areas with the concrete foundation under the old house. In other words, the external concrete areas were part of the original house's "foundation" since all the areas were interconnected with rebar. Thus, the two sides of the new house also substantially comply with the January 21 agreement.

## C. Front of the House

■ With one difference, the front of the new house sits atop the old house's foundation. In the southeast of the old house, a concrete parking pad existed that the Tuis' covered with canvas, creating a makeshift covered carport. The new house's foundation included and incorporated the old parking pad.

Strictly speaking, the new house's foundation does not comply with the January 21 agreement at this corner area, as it clearly exceeds the old house's foundation. However, as a practical matter, the parking pad was an integral feature associated with the old house's "footprint." Like the side concrete areas, trial testimony indicated that the parking pad was connected to the original house's foundation. Thus, this corner of the new house substantially complies with the January 21 agreement.

As the above facts establish, neither the front, the back, nor the two sides of the new house exceeded the dimensions set forth in the January 21, 2003 agreement. There was no breach. Accordingly, we deny Plaintiffs application for permanent injunction.

## II. The Lease

The Tuis maintain that they need bank financing to complete construction of their new house and the lease, under common lending practice, is a prerequisite to obtaining financing. They argue that Poiali`i's decision to refrain from issuing the lease is arbitrary.

Before addressing the Tuis' counterclaim, the Court would like to note that we are fully and sadly cognizant of the bitter dissention that presently tears at the relationships between these two family factions. The Tuis, on one side, and Seepa and her closely related family members, on the other side, have been neighbors on the land and for a long time have mutually engaged in antagonistic actions towards each other. While each side tends to minimize, if not disclaim, responsibility, both sides are at fault in causing what has become a deep-seated family rift.

416

For years, Poiali`i, as the family *sa`o*, has done everything he could to keep the family from splintering further. However, as the Court is well aware, Poiali`i is and has been very ill, and consequently, has been unable to broker a détente between the two camps.

Since this action began, Poiali`i has been seemingly aligned with Seepa's side of the family. Being so situated, Poiali`i apparently believed the Tuis' had violated the January 21 agreement. Consequently, he has, and continues, to refuse to issue the Tuis a long-term lease for the property, believing that the Tuis' alleged violation gave him good cause to do so.

■ Since 1983, we have consistently held that we will not disturb a *sa`o's* decision regarding communal land *unless* that decision is arbitrary, capricious or an abuse of the *sa`o's* discretion. *See e.g. Fairholt v. Aulava*, 1 A.S.R.2d 73 (Trial Div. 1983); *see also Toleafoa v. Tiapula*, 7 A.S.R.2d 117 (Land & Titles Div. 1988) (holding that when the court is asked to intervene in a family dispute, it will not substitute its judgment for the *sa`o's* absent a clear abuse of discretion).

The Tuis contend that Poiali`i has arbitrarily withheld signing the lease as a way of ensuring that construction could not continue, regardless of this case's outcome. As evidence, they argue that even in his weakened condition Poiali`i has recently issued lease agreements to his son, as well as to Seepa. However, despite the Tuis' repeated efforts, Poiali`i has consistently refused to sign their lease. These actions, the Tuis argue, demonstrate that Poiali`i's refusal is arbitrary and defies Samoan custom.

■ We disagree. Until the matter was judicially resolved, Poiali`i had good cause to refuse to issue the lease, and doing so was not an abuse of his discretion. Indeed, given the initial grant of the preliminary injunction, its subsequent dissolution, and the ensuing trial on the merits, too much uncertainty about the status of the land and future construction of the home existed. Furthermore, Poiali`i testified, in effect, that issuing a lease amid all this uncertainty would likely undermine the fragile peace that existed within the family. To refuse to issue a lease under these circumstances, and to wait until the matter was judicially resolved, was clearly not arbitrary or capricious. In fact, given the circumstances, Poiali`i's actions were quite sage.[5]

---

[5] Accordingly, we deny the Tuis' punitive damages counterclaim. Intended to punish and deter wrongdoers from similar, future misconduct, punitive damages may be awarded for outrageous conduct shown by acts done with evil motive or reckless indifference to others' rights. *See Letuli v. Lei*, 22 A.S.R.2d 77 (Land & Titles Div. 1992). Here, because Poiali`i acted cautiously and without ill-intent, there is no basis for awarding punitive damages.

However, now that the matter has been resolved, and the Tuis found to have substantially complied with the agreement, continuing to withhold the lease in defiance of this Court's findings would be arbitrary and capricious. Because the Court has ruled that the Tuis did not violate the agreement, we hope that Poiali`i will issue the lease and necessarily related loan documents in a timely manner and in compliance with this Court's findings. Only, then, once the lease is effective, will the parties be able to put this long, emotionally taxing affair behind them.

## Conclusion

We would like nothing better than to fashion a solution to the controversy that would restore peace and harmony within the family. However, the sole issue before us ostensibly defies a compromise that would promote that result. We must, and can only, decide whether or not the Tuis have violated the January 21 agreement, and if not, whether they are entitled to a long-term lease of the land.

Having found the Tuis did not violate the January 21 agreement, Plaintiffs' claims are dismissed. Because the issue has been judicially resolved, we call on Poiali`i to execute the lease and any other necessary loan documents in a timely manner and in compliance with this Court's findings. We will further intervene in this action only if Poiali`i refuses to sign the lease and other required documents.

It is so ordered.